In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1875

ATHANASIOS SEMBOS,

*Plaintiff-Appellant,*

V.

PHILIPS COMPONENTS,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4651—**Blanche M. Manning,** *Judge.*

———————

ARGUED OCTOBER 30, 2003—DECIDED JULY 19, 2004

———————

Before RIPPLE, MANION, and DIANE P. WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Athanasios Sembos sued his former employer, Philips Components, for age discrimination after Philips fired him. Sembos also alleged state law claims for breach of contract and promissory estoppel. The district court granted Philips summary judgment. Sembos appeals. We affirm.

I.

Athanasios Sembos began working for Philips Components, a division of Philips Electronics North America Corporation,[1] in 1978. In September 1998, Philips notified Sembos that it was selling a substantial portion of the Philips Components division to Beyerschlag Centralab Components ("BCC"). Many jobs at Philips were lost due to this sale, although many of the former Philips employees were hired by BCC, including Sembos' former supervisor, Guiseppe Corti. After Philips announced the sale to BCC, Corti and another executive, Nigel Blakeway, approached Sembos and offered him a position at BCC. Sembos told them that he would accept the position at BCC only if his pension benefits with BCC would be the same as they were under Philips' pension plan. Sembos claims that the two men promised him equivalent pension benefits, or alternatively that, if BCC's pension plan did not provide him the same benefits, he could remain employed at Philips.

---

[1] Philips Components is a division of Philips Electronics North America Corporation. Sembos wrongly named the unincorporated division, Philips Components, as a defendant, as opposed to the corporate entity. *See Spearing v. National Iron Co.,* 770 F.2d 87, 88-89 (7th Cir. 1985) (stating that an unincorporated division of a corporation is not suable in its own right). However, Philips Electronics North America Corporation received actual notice of the suit and defended the case up to this point without seeking dismissal based on Sembos' failure to name the proper defendant. Given that we are affirming, dismissing this case because Sembos named the corporate division and not the corporate entity would only unnecessarily prolong the proceedings. Therefore, we address the merits of the claims as if Philips Electronics had been properly named, and we refer to the defendant as Philips throughout. *See, e.g., Continental Ins. Co. v. Illinois Dept. of Transp.,* 709 F.2d 471, 473 (7th Cir. 1983) (reaching merits of case where plaintiff apparently named wrong governmental defendant).

On December 13, 1998, Sembos learned that BCC's pension plan did not offer benefits equal to those he had through his pension plan with Philips. Apparently, the problem from Sembos' perspective was that Philips' pension plan adopted the "Rule of 85," which allowed employees to retire with full pension and medical benefits when the employee's age plus years of service equaled 85, whereas BCC's plan did not adopt this rule. (At that time, Sembos was about six years away from eligibility under the Rule of 85.)

After learning that BCC's pension plan did not provide him the benefits of the Rule of 85, Sembos rejected BCC's offer and decided to continue his employment with Philips. Shortly thereafter, Philips and BCC agreed that Sembos would work for BCC for six months as a loaned employee but would remain on Philips' payroll. Sembos was informed of this arrangement in a February 1, 1999 email:

> Effective immediately, your services will be contracted out to BC Components. You will remain a Philips employee, and you will be paid by Philips. As you are performing work for BC Components, Philips will bill your cost back to BC Components. Philips and BC Components have agreed to this temporary work arrangement for a period of up to six months. During this time, Philips will actively look for other employment opportunities for you within Philips. If you find a suitable employment opportunity, you will be fully supported in a quick transition. If, at the end of six months (August 1, 1999), you have been unable to find a suitable employment opportunity, Philips reserves the right to terminate your employment with the Company.

Over the next six months, Sembos expressed an interest in eight positions at Philips, but he was not hired for any of those positions. Philips claims that Sembos never actually applied for the jobs and that is why it did not hire him;

Sembos claims that because Philips' Human Resource department had his resume, his expression of interest was enough. In the end, however, Sembos did not find another job with Philips and, on August 21, 1999, Philips fired him. At that time, Sembos was 51.

Sembos responded by suing Philips for age discrimination. He later amended his complaint to add breach of contract and promissory estoppel claims. Philips moved for summary judgment. The district court granted Philips summary judgment on Sembos' age discrimination claim, concluding that Sembos failed to establish that he was qualified for any open position at Philips. The district court also granted Philips summary judgment on Sembos' breach of contract and promissory estoppel claims, holding that those claims were preempted by the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. ("ERISA"). Sembos appeals.

## II.

On appeal, Sembos argues that the district court erred in granting Philips summary judgment on his age discrimination claim. Sembos also challenges the district court's ruling that ERISA preempted his breach of contract and promissory estoppel claims. We consider each issue in turn.

### A.  *Age Discrimination*

Sembos sued Philips under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), alleging that Philips refused to hire him for any of the vacancies within the company due to his age. Sembos attempted to prove his age discrimination claim solely under the indirect method of *McDonnell-Douglas*. Under the indirect method,

Sembos must first present a prima facie case of discrimination by establishing that he (1) was a member of the protected group; (2) sought a position or a transfer for which he was qualified; (3) was not hired; and (4) a substantially younger person who was similarly situated was hired. *Zaccagnini v. Charles Levy Circ. Co.*, 338 F.3d 672, 675 (7th Cir. 2003).

The district court concluded that Sembos failed to establish the second and fourth prongs of the prima facie case, namely that he was qualified but denied another position within Philips, while substantially younger applicants were hired for those positions. On appeal, Sembos claims that he presented sufficient evidence to satisfy these prongs. First, Sembos points to eight positions with Philips for which he submitted his resume, but for which he was not hired.[2] However, as the district court noted, Sembos failed to present any evidence that he was qualified for those jobs, beyond his own subjective opinion that he "may" have been qualified. Conversely, Philips presented evidence that Sembos was not qualified for these positions, pointing to the deposition testimony of Bob Akers, the recruiter who worked with Sembos in regard to these eight openings. Akers stated that those jobs "required very highly qualified people with certain skill sets, and those skill sets involved

---

[2] Philips argues that Sembos did not apply for these jobs and therefore Sembos cannot claim he was discriminatorily denied those positions. However, as the district court noted, Philips' policy allowed current employees to apply for openings by submitting their resumes to the Human Resource department and Sembos had submitted his resume to Human Resources and then inquired about those eight openings. Viewing the facts in the light most favorable to Sembos, we conclude that Sembos applied for those eight jobs.

either knowing the flat display world or having some reasonable technical experience with embedded software or ACIX design. [Plaintiff] didn't have those."

Sembos responds by claiming that Akers had in fact stated that he was qualified for those positions. In support of this claim, Sembos cites his own deposition testimony, wherein he stated that Akers' "general response was, you don't want to consider this job. You're qualified for this job. This job is not good. You're overqualified for—under qualified for this job. I don't remember job by job the response, but the general response that he left me with is overqualified or underqualified, don't want any of these jobs, there will be other stuff down the road."

In context, then, what Akers said was not that Sembos was qualified, but that he was overqualified. Of course, if he were overqualified, then, at a minimum, he would have also been qualified for the positions. The problem for Sembos, however, is that this testimony fails to establish which of the eight positions Akers believed Sembos was overqualified for. That is significant because of those eight jobs, Philips hired younger individuals to fill only two openings.[3] Thus, Akers' testimony that Sembos was overqualified for some jobs and underqualified for others is insufficient to establish that he was qualified for the two positions which Philips filled with younger applicants.[4] Therefore, Sembos failed to

---

[3] Five of the other positions were never filled because of downsizing or restructuring, and the sixth position was actually filled before Sembos expressed an interest in the position.

[4] Furthermore, even if Akers' testimony established that Sembos was qualified for the two positions filled by younger individuals, the testimony was actually that he was overqualified. Although that means Sembos was qualified for purposes of the prima facie

(continued...)

establish a prima facie case of discrimination based on those eight positions.

Moreover, the hiring managers for those two positions stated in their sworn affidavits that Sembos was not well-qualified for the jobs and that "they would not have considered him to be a viable candidate." Accordingly, even if we were to assume that Sembos was, in fact, qualified for those positions, and thus established a prima facie case of discrimination, Philips presented evidence of a legitimate non-discriminatory reason for its refusal to hire Sembos, namely the hiring managers' belief that Sembos was not a viable candidate given his credentials and work experience. Sembos failed to present any evidence that those asserted reasons were pretextual. Therefore, even assuming Sembos established a prima facie case for these job openings, Philips is nonetheless entitled to summary judgment. *See Helland v. South Bend Comm. Sch. Corp.*, 93 F.3d 327, 330 (7th Cir. 1996) ("Because a Title VII claim requires intentional discrimination, the pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate."). *See also Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 458-59 (7th Cir. 1999) (stating that plaintiff must present evidence that employer did not honestly believe that he was unqualified for the position).

---

[4] (...continued)
case, once the burden shifts to Philips, Sembos' over-qualification constitutes a legitimate, non-discriminatory reason for rejecting him for the open positions. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1290 (9th Cir. 2000). Therefore, even if Sembos established a prima facie case of discrimination, Philips was nonetheless entitled to summary judgment because he was overqualified for the job. *Id.* (holding employer is entitled to summary judgment on a plaintiff's ADEA claim where the plaintiff was rejected for a position because he was overqualified).

Sembos contends that in addition to the eight positions in which he indicated an interest, he also applied for ten other jobs that he learned about on the Philips Electronics internet site. Philips maintains that, because those positions were with other divisions, Philips Components had no authority to make hiring decisions and thus is not responsible for any alleged discrimination. However, as noted earlier, the appropriate defendant is Philips Electronics, the corporate entity, and not the individual divisions. Just as Philips Components' actions may create liability for Philips Electronics, so too may the actions of another division.

But Sembos once again failed to present evidence to support his allegation that he was qualified for those ten positions. Although Sembos claims in his brief, "[i]n regard to those positions, Sembos testified that he was qualified and Philips did not and cannot refute his qualification," the record to which Sembos cites does not support this assertion. In fact, in support of this proposition, Sembos cites paragraph 160 of record item 50, which is Philips' response to Sembos' Rule 56.1(B)(3) statement, and in that paragraph, Philips denies Sembos' assertion that he was qualified for the open positions. Nonetheless, for the sake of completeness, we have looked to the record citations underlying Sembos' Rule 56.1(B)(3) statement, and those portions of the record also fail to support Sembos' contention that he was qualified for the ten positions at issue. Rather, throughout his deposition testimony, when asked whether he was qualified for those open positions, Sembos responded along the lines of "In my mind, I could be," and when further questioned about his background and how he could be qualified for positions unrelated to his experience, Sembos answered to the effect that the skill "was something that could be achieved." Similarly, in other portions of his deposition, Sembos stated that "I thought that it may be something that I could do," and that "based on the limited

knowledge I had, I could be considered for" the open positions. The remaining deposition testimony cited by Sembos followed in a similar vein. In short, Sembos' testimony failed to establish that he was qualified for the open positions, only that he may be, or that he could do some of the jobs after receiving additional training. Sembos' subjective belief that he "may" be able to perform the job is insufficient to establish that he is qualified for the position, especially in light of Sembos' own admission that he would need additional training for some of the positions. Therefore, Sembos' claims premised on the ten positions in other divisions also fail.

Finally, Sembos claims that he should be treated as if he applied for 89 other positions within Philips which were filled in 1999, during the time period in which he was searching for a new position—even though he never applied for any of those jobs. We reject this argument. An employer cannot be liable for failing to hire a person who does not apply for a job.[5] *See Konowitz v. Schnadig Corp.*, 965 F.2d 230, 234 (7th Cir. 1992) (concluding that an employer's failure to consider the plaintiff for other openings with the company after a reduction in force "does not lead to an inference of discrimination, since nothing in the record suggests that he

---

[5] Sembos also complains that Philips did not notify him of the vacancies. However, Sembos does not claim that this lack of notice was motivated by his age or that younger employees were informed of the other job openings while he was not. Therefore, even if Philips had an obligation to inform Sembos of all available positions, its failure to do so does not support an age discrimination claim. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 615 (7th Cir. 2000) (holding that during a reduction in force, an employer's obligation under the ADEA is limited to providing older employees with the same job placement opportunities it offers younger employees).

applied for any jobs or informed the company of his interest"). Accordingly, Sembos' reliance on those 89 positions filled by other people as proof of the second element of the prima facie case is misplaced. *See Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985) (holding that a plaintiff's failure to express more than a "vague interest" in an open position prevented her from establishing a prima facie case of discrimination). Therefore, Philips was entitled to summary judgment on Sembos' age discrimination claim.[6]

## B.   Breach of Contract & Promissory Estoppel Claims

In addition to suing for age discrimination, Sembos also alleged breach of contract and promissory estoppel claims. Specifically, Sembos contends that he had two contracts with Philips, the first being the September agreement in which Corti promised him that his pension benefits would remain the same if he accepted a position with BCC, or that if the benefits were not the same, he could continue his em-

---

[6]   On appeal, Sembos also points to three age-based statements allegedly made by Philips employees, including one purportedly made by the former CEO that Philips wanted to hire "young and angry men"; that a co-worker referred to him as an "old man"; and that Akers told Sembos to delete dates from his resume to remove details indicating his age. But Sembos does not attempt to prove discrimination through the direct method, so these statements are irrelevant as to whether Sembos established a prima facie case of age discrimination. And although Sembos points to them as evidence of pretext, without establishing a prima facie case the question of pretext never arises. Moreover, none of these comments can be attributed to the decisionmakers, so they are irrelevant in any event. *See Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003).

ployment with Philips. Sembos also contends that Philips' email of February 1, 1999, constituted a contract in that Philips promised to actively look for other employment opportunities for Sembos. Alternatively, Sembos claims he relied on these promises to his detriment and thus has stated a promissory estoppel claim.

The district court granted Philips summary judgment on these claims, concluding that they were preempted by ERISA. Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law claim "relates" to an employee benefit plan if it has a connection with or reference to such a plan. *Ingersoll-Rand, Co. v. McClendon*, 498 U.S. 133, 139 (1990).

Whether Sembos' breach of contract and promissory estoppel claims are preempted by Section 514(a) is a difficult question. *Compare Dranchak v. Akzo Nobel Inc.*, 88 F.3d 457, 459 (7th Cir. 1996) (concluding § 514(a) preempts breach of contract claim because the alleged contract promised the plaintiff extra pension credits and the continuation of health benefits under the firm's welfare plan) *and Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989) (holding that, because to evaluate the plaintiffs' breach of contract claims the court would have no choice but to refer to the ERISA plans, those claims had a "connection with or reference to" employee benefit plans and were thus preempted by ERISA); *with Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir. 1989) (holding that the plaintiffs' breach of contract and promissory estoppel claims were not preempted by ERISA even though the plaintiffs were seeking pension benefits because "[t]he claims do not bring into question whether Plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment

for a term"); *Rozzell v. Security Services, Inc.,* 38 F.3d 819, 822 (5th Cir. 1994) (stating that it cannot be that "any lawsuit in which reference to a benefit plan is necessary to compute plaintiff's damages is preempted by ERISA" and that the plaintiff's state law claim alleging that he was wrongfully fired for filing a worker's compensation claim is not preempted). However, because, as discussed below, Sembos' state law claims fail on the merits and because we can affirm on any basis in the record, *Ortloff v. United States,* 335 F.3d 652, 661 (7th Cir. 2003) (citing *Rothner v. City of Chicago,* 929 F.2d 297, 303 n.9 (7th Cir. 1991)), we need not delve into the intricacies of ERISA preemption in this case.

### 1.   *Breach of Contract*

As noted above, Sembos claims that Philips breached two separate contracts. First, Sembos claims that he had a contract with Philips formed in September 1998 when Corti and Blakeway promised that Sembos would either obtain a position at BCC with the same pension benefits, or that Philips would continue to employ him. Sembos claims that Philips breached this contract by subsequently stating in a February 1, 1999, email that his employment with Philips would end if he did not find suitable employment within six months, and then later by firing him. Sembos also claims that the February 1, 1999, email constituted a second contract and that, in this contract, Philips committed that it would "actively look for other employment opportunities for [Sembos] . . . within Philips." Sembos claims that Philips also breached this contract by failing to actively seek other employment opportunities for him.

Under Illinois law, for a binding contract of employment to exist, the employer must make a clear and definite promise and there must be valid consideration. *See Kalush v. Deluxe Corp.,* 171 F.3d 489, 492 (7th Cir. 1999); *Tolmie v.*

*United Parcel Service, Inc.*, 930 F.2d 579, 580 (7th Cir. 1991). In this case, in the two alleged contracts Sembos identifies, Philips did not provide any definite assurance of continued employment. The alleged promises did not state a position, a salary, or the duration of any employment. The second alleged promise is also not sufficiently definite to create contractual liability. It is impossible to know what "actively" means for purposes of determining a breach. Therefore, under Illinois law, Sembos' breach of contract claims fail.

### 2. *Promissory Estoppel*

Alternatively, Sembos argues that Philips' two promises form the basis of a suit based on the theory of promissory estoppel. Under Illinois law, promissory estoppel requires proof of the existence of an unambiguous promise; reliance on that promise; that the reliance be reasonable and foreseeable; and that the promisee actually rely on the promise to his detriment. *Vajda v. Arthur Anderson & Co.*, 624 N.E.2d 1343, 1350 (Ill. App. Ct. 1993).

Here, Sembos' case falters again because the alleged promises were too indefinite, as a matter of law, to constitute unambiguous promises supporting liability on the theory of promissory estoppel. *See Demos v. National Bank of Greece*, 567 N.E.2d 1083, 1088 (Ill. App. Ct. 1991) (holding that because alleged promise to enter into a loan agreement failed to contain the interest, duration, or terms of repayment, it was too indefinite to be enforceable, and the doctrine of promissory estoppel was inapplicable as a matter of law). Because Philips did not promise Sembos any specific position, salary, or other terms of employment, it was unreasonable for Sembos to rely on Philips' alleged promise of employment. *See M.T. Bonk Co. v. Milton Bradley Co.*, 945

F.2d 1404, 1408 (7th Cir. 1991) (affirming judgment on jury verdict and holding that reliance on a promise with uncertain terms that could be cancelled at any time was not reasonable); *Demos,* 567 N.E.2d at 1087 (holding that reliance on a promise to lend money at an indefinite interest rate was not reasonable). Additionally, even assuming the alleged promises were sufficiently definite, it was unreasonable for Sembos to believe that Philips would employ him indefinitely. Morever, Sembos failed to present any evidence indicating that he detrimentally relied on Philips' alleged promises: Sembos does not claim that he would have accepted the position with BCC but did not because of Philips' alleged promise that it would continue to employ him. Rather, Sembos stated unequivocally that if BCC's pension plan was not equivalent to the one offered by Philips, he would not have accepted the position with BCC. Sembos also does not claim that the alleged promises prompted him to refuse other job offers. Under these circumstances, Philips was entitled to summary judgment on Sembos' promissory estoppel claim as well.

## III.

Sembos failed to present sufficient evidence to establish a prima facie case of age discrimination. Therefore, the district court properly granted Philips summary judgment on his ADEA claim. Sembos' state law breach of contract and promissory estoppel claims, even if not preempted by ERISA, also fail, and the district court properly granted Philips summary judgment on those claims because the alleged promises were too vague and indefinite to support relief. For these and the foregoing reasons, we AFFIRM.

No. 03-1875                                              15

A true Copy:

    Teste:

                        _____
                        *Clerk of the United States Court of*
                           *Appeals for the Seventh Circuit*