

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-3-2007

# Zarrilli v. John Hancock Life

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1642

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Zarrilli v. John Hancock Life" (2007). *2007 Decisions*. Paper 1365.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1365

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1642

JAMES ZARRILLI; CAROL ZARRILLI, Individuals

v.

JOHN HANCOCK LIFE INSURANCE COMPANY

James Zarrilli; Carol Zarrilli,
Appellants

On Appeal From the United States District Court
For the District of New Jersey
(D.N.J. Civ. No. 04-cv-03173)
District Judge:  Honorable William H. Walls

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2006

Before: Barry, Chagares and Roth, <u>Circuit</u> <u>Judges</u>

(Filed: April 3, 2007)

OPINION

PER CURIAM

James and Carol Zarrilli appeal <u>pro</u> <u>se</u> from the District Court's entry of summary

judgment in favor of John Hancock Life Insurance Company ("John Hancock") on claims

potentially arising from John Hancock's termination of Mr. Zarrilli's employment. For the reasons that follow, we will affirm.

I.

Mr. Zarrilli worked for John Hancock as a marketing representative (apparently without an employment contract) until the company terminated him in September 2001. The circumstances surrounding his termination are as follows. In 1995, Mr. Zarrilli invested money belonging to his mentally-handicapped uncle, Robert Frungillo, in John Hancock investment accounts. In 1995 and 1996, the Zarrillis borrowed approximately $200,000 from Mr. Frungillo by withdrawing funds directly from those and other accounts.[1] In 1998, Mr. Frungillo sued John Hancock and the Zarrillis, alleging that they had converted the withdrawn funds. Mr. Zarrilli was on medical leave at that time. When he returned in August 1999, John Hancock immediately suspended him with pay pending its investigation of the matter. Two months later, John Hancock reinstated Mr. Zarrilli, but placed him on probation pending its investigation and notified him that he might be subject to further discipline, including termination.

In 2001, John Hancock encouraged the Zarrillis to settle the Frungillo lawsuit, telling them that "we should all be anxious to get back to our 'normal' lives." The Zarrillis settled the suit on June 6, 2001. On June 19, 2001, a John Hancock subsidiary

---

[1] The parties dispute whether the Zarrillis borrowed or stole this money, but we will assume that Mr. Frungillo agreed to lend the Zarrillis the money as they allege.

2

terminated Mr. Zarrilli's registration with the National Association of Securities Dealers, citing, among other things, a company policy against accepting loans from clients. John Hancock terminated his employment three months later. If he had remained employed by John Hancock for twenty months longer, his pension (then valued at $127,000) would have become "grandfathered" and would rapidly have begun to increase in value.

Mr. Zarrilli's work voice mail message remained active until December 2002, and his name remained on John Hancock correspondence until sometime thereafter. John Hancock notified Mr. Zarrilli's former clients of his termination in October 2003 by sending them a letter that included the statement "[i]f James Zarrilli contacts you and states that he can still be your John Hancock service representative, he is wrong and we would appreciate knowing of such contact."

In February 2004, the Zarrillis filed their complaint in New Jersey state court, and John Hancock later removed it to federal court. On January 26, 2006, the District Court granted John Hancock's motion for summary judgment. The Zarrillis appeal from that order.

## II.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's entry of summary judgment is plenary. See Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). Summary judgment may be granted only if there are no genuine issues of material fact and if, viewing the facts in the light most favorable

3

to the non-moving party, the moving party is entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56(c). We agree with the District Court's reasons for granting John Hancock's motion for summary judgment, and will only summarize them here.

The District Court liberally (and properly) construed the Zarrillis' complaint to assert three claims. Their first claim is based on the termination of Mr. Zarrilli's at-will employment. The Zarrillis assert two theories in support of this claim. First, they allege that the termination was motivated by John Hancock's desire to prevent Mr. Zarrilli from reaping increased pension benefits. That claim is governed by § 510 of the Employee Retirement Income Service Act of 1974 ("ERISA"), 29 U.S.C. § 1140, and requires the Zarrillis to establish, among other things, a "specific intent on the part of the employer to interfere with the attainment" of increased benefits. Hendricks v. Edgewater Steel Co., 898 F.2d 385, 389 (3d Cir. 1990). The only evidence that the Zarrillis produced in support of this claim, however, was the fact that John Hancock terminated Mr. Zarrilli eighteen months before his pension would have begun to increase in value. That evidence is not sufficient to survive a motion for summary judgment. See id. at 389-90 (holding that termination eleven months before vesting of pension benefits was insufficient to show specific intent); Turner, 901 F.2d at 347-48 (affirming summary judgment for employer where termination deprived employee of opportunity to accrue additional pension benefits because employee produced no evidence "suggesting that pension interference might have been a motivating factor").

4

Second, the Zarrillis assert that John Hancock was obligated to retain Mr. Zarrilli on a promissory estoppel theory because it had promised him continued employment.[2] Under New Jersey law,[3] "the sine qua non" of a promissory estoppel claim is a "clear and definite promise." Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 395 A.2d 222, 230 (N.J. Super. Ct. App. Div. 1978). We agree with the District Court that the only potentially qualifying statement – John Hancock's statement that the Zarrillis should settle the Frungillo litigation because "we should all be anxious to get back to our 'normal' lives" – does not constitute a "clear and definite promise" of future employment, particularly in light of Mr. Zarrilli's probationary status.

The Zarrillis' second claim is that John Hancock defamed Mr. Zarrilli in its letter to his former clients by informing them that "[i]f James Zarrilli contacts you and states that he can still be your John Hancock service representative, he is wrong and we would appreciate knowing of such contact." We agree with the District Court that this statement, read in the context of the letter as a whole, is not susceptible of a defamatory meaning. See Taj Mahal Travel, Inc. v. Delta Airlines Inc., 164 F.3d 186, 189 (3d Cir. 1998) (setting forth New Jersey's definition of defamation and explaining that whether a

---

[2]  Neither the parties nor the District Court discussed whether this claim might be preempted by ERISA. See Sembos v. Philips Components, 376 F.3d 696, 703-04 (7th Cir. 2004) (surveying authority regarding ERISA preemption of various contract and promissory estoppel claims). Because this claim fails under state law, "we need not delve into the intricacies of ERISA preemption in this case." Id. at 704.

[3]  The parties assume, as did the District Court, that New Jersey law applies to the Zarrillis' state-law claims. We see no reason in the record to question that assumption.

5

statement is susceptible of a defamatory meaning is a question of law).

Finally, the Zarrillis claim that John Hancock improperly kept Mr. Zarrilli's voice mail message active and included his name on correspondence after he had been terminated. The District Court construed this claim as one of misappropriation of Mr. Zarrilli's name for John Hancock's benefit, and concluded that it fails as a matter of law because the Zarrillis presented no evidence that John Hancock acted with a commercial purpose or sought some other benefit from what it claimed had been a mistake. See Bisbee v. John C. Conover Agency, 452 A.2d 689, 692-93 (N.J. Super. Ct. App. Div. 1982). Having reviewed the record, we agree with the District Court in this respect as well.

### III.

Accordingly, we will affirm the District Court's entry of summary judgment in favor of John Hancock.