**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 24, 2009[*]
Decided June 24, 2009

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-4255

ROBERT JOHNSON,
    *Plaintiff-Appellant,*

v.

COOK INCORPORATED,
    *Defendant-Appellee.*

Appeal from the United States District
Court for the Northern District of Illinois,
Eastern Division.

No. 07 C 4911

Elaine E. Bucklo,
*Judge.*

**O R D E R**

Robert Johnson sued Cook Incorporated, a manufacturer of medical equipment, alleging that Cook refused to hire him for an entry-level position because of his age. *See* 29 U.S.C. § 623(a)(1). The district court granted summary judgment for Cook, and we affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

Johnson is no stranger to federal-court litigation. Fourteen years ago he sued a financial services company for age discrimination after he was turned down for an internship offered to recent college graduates contemplating an MBA; Johnson was approximately twenty years out of college and already had a master's degree. *Johnson v. Prudential Inv. Corp.*, No. 95 C 5513 (N.D. Ill. filed Sept. 26, 1995). Then he sued a temp agency for disability discrimination, claiming that the agency refused to place him because he is missing a number of teeth. *Johnson v. Am. Chamber of Commerce Publishers, Inc.*, 108 F.3d 818 (7th Cir. 1997). When Reader's Digest mentioned that suit in an article about frivolous litigation under the Americans with Disabilities Act, Johnson sued the publisher for defamation. *Johnson v. Readers Digest Assoc., Inc.*, No. 99 C 2920 (N.D. Ill. filed May 3, 1999). Most recently he sued a women's advocacy group for gender discrimination after the organization declined to hire him as a counselor serving female victims of domestic violence. *Johnson v. Apna Ghar, Inc.*, 330 F.3d 999 (7th Cir. 2003). Each case ultimately settled. On top of all these, after Johnson flunked out of law school, he sued the school and its faculty under a number of theories. *Johnson v. Detroit Coll. of Law*, 1992 WL 363609 (6th Cir. Dec. 9, 1992) (unpublished opinion).

Johnson's allegations in this case mirror those of his first suit. In 2005, when he was 56, Johnson answered a classified ad inviting candidates "who have recently or are about to graduate from college" with a degree in business or biology to apply for a training program for Cook's entry-level sales representatives. Cook targets applicants with little or no sales experience; after completing the training program, the new sales representatives assist experienced sales staff and fill temporary openings before they are given their own territory. Johnson submitted a resume that touted his "[t]wenty years of sales, demonstrating, teaching, administrative, and clerical experiences" and disclosed that he graduated from college in 1978.

Cook hired nine new employees for the training program. When Johnson learned that he was not one of them, he brought this action after exhausting his administrative remedies. Johnson conceded in the district court that he lacked direct evidence of age discrimination, and the district judge concluded that his evidence at summary judgment also failed to establish a prima facie case under the indirect method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The court reasoned that Johnson is not similarly situated to the younger hires.

A plaintiff proceeding under the indirect method must first establish a prima facie case; if the plaintiff does so, the employer then must articulate a legitimate reason for its adverse action. *See id*. at 802; *Jackson v. City of Chi.*, 552 F.3d 619, 622 (7th Cir. 2009). When the plaintiff's claim is that age was the reason he was turned down for a job, he will make

out a prima facie case if he was over 40 years old and, though qualified for the job, was rejected in favor of substantially younger, yet otherwise similarly situated, applicants. *See Jordan v. City of Gary, Ind.*, 396 F.3d 825, 833 (7th Cir. 2005); *Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 675 (7th Cir. 2003).

At summary judgment counsel for Cook described Johnson as "at least minimally qualified" but also maintained that he was not similarly situated to the successful applicants because relative to them, he was "overqualified." Cook presented evidence that unlike the persons hired, Johnson did not possess the threshold attributes Cook required: he was not a recent college graduate, and by his own boasts, he had far more than "little or no" sales experience. One of Cook's human-resources managers testified by affidavit that although he no longer could recall reviewing Johnson's resume, it was company policy to hire only candidates with little or no sales experience for the entry-level positions. The company believed, he explained, that applicants with extensive sales experience would be less likely to embrace Cook's training and sales methods. Since Johnson was, as Cook's counsel put it, "overqualified for the internship-like position," company practice dictated rejecting his application.

Johnson moved to strike the witness's affidavit and disputed the assertion that a lack of sales experience was a necessary qualification. Johnson argued that the job posting does not specify that prior sales experience would disqualify candidates and noted that many of the hires had been employed previously, some even in "sales." But the district court agreed with Cook that Johnson's experience and time out of college (along with several other factors) rendered him unsuitable compared to the successful applicants and prevented him from establishing a prima facie case of discrimination.

On appeal Johnson contends that the human-resources manager had no present recollection of reviewing his resume, and thus the witness's affidavit should have been disregarded as not based on personal knowledge. But Johnson confuses lack of memory with lack of involvement. The witness *did* evaluate Johnson's application, along with thousands of others; he was certain that he looked at Johnson's application because his name appears on the rejection letter. He thus had personal knowledge of the events leading to Johnson's elimination from consideration, even if he did not later recall what he knew. That situation, however, is anticipated by Federal Rule of Evidence 406, which allows a witness unable to recall a person or organization's conduct at a specific moment to testify as to the actor's routine practice in order to establish that the conduct in question was in keeping with that practice. FED. R. EVID. 406; *Babcock v. Gen. Motors Corp.*, 299 F.3d 60, 66 (1st Cir. 2002). That is precisely what occurred here: The human-resources manager did not remember specifically rejecting Johnson's application, but he testified that his routine

practice was to reject candidates like Johnson who were not recent graduates and had too much sales experience for the entry-level position.

Johnson also renews his argument that his previous work experience and time out of college did not distinguish him from successful applicants and was not a valid basis for rejecting his application. Echoing the terminology used by Cook and the district court, Johnson submits that there is a genuine factual issue as to whether he was "similarly situated" to those hired.

This emphasis on word choice misses the bigger point. The question really is whether Johnson's unsuitability for the position is reasonably subject to dispute. Although counsel for Cook mislabeled Johnson as "minimally qualified," whatever that means, the company's evidence actually established that Johnson did not meet the fundamental requirements for the entry-level position because he was not a recent college graduate and had many years of sales experience. Johnson, after all, graduated from college almost thirty years before he applied to Cook, and his resume shows that he worked for five years as an advertising salesperson for a newspaper, for three additional years as a telemarketer and telemarketing supervisor, and for two more years as a "real estate salesperson." Cook was perfectly free to reject Johnson's application because with his surfeit of sales experience, he did not meet the job requirements; i.e., he was *unqualified* for Cook's entry-level jobs. *See Sembos v. Philips Components*, 376 F.3d 696, 701 n. 4 (7th Cir. 2004) (affirming summary judgment in age-discrimination case where applicant was rejected because among other reasons, he was overqualified for position); *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006) (same); *EEOC v. Ins. Co. of N. Am.*, 49 F.3d 1418, 1421 (9th Cir. 1994).

Johnson tries to head off this conclusion by pointing out that Cook hired others who, he says, had sales experience and were not immediately out of college; this evidence, he contends, negates those requirements, leaving him qualified. But Johnson grossly misrepresents the record. Of the nine who were hired, the closest any came to having "sales" experience were school-year jobs at businesses like Home Depot, Macy's, and Subway, and a six-month post-college stint as a "financial sales representative." The other six who had worked at all after college had held the following jobs: financial aid counselor, loan officer, emergency medical technician, pharmacy technician, small business consultant, and film industry production coordinator. Furthermore, seven of the new hires graduated college within the past two years; the other two completed their educations no more than five years ago. In fact, then, the résumés of the candidates who were hired underscore, rather than undercut, the legitimacy of Cook's explanation for its lack of interest in Johnson.

We agree with the district court that Johnson's indirect evidence of discrimination fell far short.  And Johnson's concession to the district court that he had no direct evidence prevents him from now attempting to prove discrimination via the direct method.  *See Burks v. Wis Dep't of Transp.*, 464 F.3d 744, 751 n. 3 (7th Cir. 2006).

Accordingly, we AFFIRM the judgment of the district court.