NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2011[*]
Decided May 11, 2011

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOHN L. COFFEY, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

No. 10-3186

| | |
|---|---|
| MELVIN D. REED, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | Nos. 08-C-684 & 08-C-685 |
| EWALD AUTOMOTIVE GROUP, INC., *Defendant-Appellee*. | William E. Callahan, Jr., *Magistrate Judge*. |

## O R D E R

Melvin Reed claims that he was a victim of racial discrimination and retaliation during his brief employment as a car salesman at a dealership in Milwaukee, Wisconsin. He

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

sued his former employer, named here as Ewald Automotive Group,[1] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. A magistrate judge, presiding by consent, granted summary judgment for Ewald. We affirm that decision.

Before this litigation, Reed already had filed no fewer than 14 suits in federal court claiming employment discrimination by businesses in the Milwaukee area, *see Reed v. Innovative Health & Fitness*, 259 F. App'x 875, 876 (7th Cir. 2008), and two more cases have followed this one. Reed, an African American, started his job at Ewald on November 2, 2005. On November 29 he and John St. Clair, a white salesman, threatened each other with physical harm during an argument, and both men were warned that any workplace violence or threats in the future would result in termination. This incident is one of several recounted in a charge of discrimination that Reed submitted to the Equal Employment Opportunity Commission and the Wisconsin Department of Workforce Development in early February 2006. Then on March 6, 2006, Reed argued with Jeffrey Halama, a white sales manager, and threatened to strike him. A coworker intervened and restrained Reed, who was fired the same day. In December 2006 he submitted another charge of discrimination to the EEOC and the Department of Workforce Development, this time alleging that he was fired because of his race and in retaliation for his February administrative charge. The EEOC dismissed both charges in May 2008, and Reed filed a separate Title VII suit for each. The two cases were consolidated in the district court, and we treat them as one action.

In his complaint Reed alleged that Ewald subjected him to a hostile work environment and ultimately fired him because of his race and to retaliate for complaining about discrimination. He minimized his role in the altercations with St. Clair and Halama, and criticized the dealership's response to those episodes. Reed said that superiors disciplined him for perceived infractions that white employees committed without consequence, and he alleged that white coworkers were not reprimanded or verbally

---

[1] Reed was employed by Ewald's Mayfair Chrysler-Jeep, Inc., which, according to public records, was merged into Ewald Holdings, Inc., in early 2008. The named defendant, Ewald Automotive Group (the company converted to a limited liability corporation before Reed filed suit and appears to be inaccurately named in the case caption and in the parties's submissions) has no apparent ownership interest in the corporation that employed Reed, and we have not been told how the two companies are related. But Reed's former employer has not protested the naming error, so we have disregarded the mistake. *See Sembos v. Philips Components*, 376 F.3d 696, 698 n.1 (7th Cir. 2004). For simplicity we refer to the defendant as "Ewald."

abused in front of peers as he was. He also accused managers of diverting sales away from him and other black employees.

Reed proceeded under the indirect method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). After the magistrate judge resolved a dispute about the adequacy of Ewald's responses to Reed's discovery requests, the dealership moved for summary judgment. Ewald argued that Reed had suffered no materially adverse action except for the loss of his job, which the dealership attributed to the threats against St. Clair and Halama. Reed's admissible evidence was limited to his own affidavit, so Ewald's presentation mostly was uncontested. We summarize the undisputed evidence in the light most favorable to Reed. *See Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011).

Reed had been employed for just a few weeks before quarreling with St. Clair, who was working at a computer terminal when Reed tried to initiate a conversation. St. Clair asked Reed not to interrupt, and when Reed would not leave him alone, he began cursing. After yelling back, "Ain't going to be too many more of those f you's," Reed rose from his chair and approached St. Clair until they were standing inches apart. St. Clair turned away but told Reed to watch his back, prompting Reed to taunt, "Do you want to jump?" Reed later boasted that St. Clair knew he had met "more than his match." Ewald's misconduct policy, which is included in the employee handbook given to Reed, prohibits both physical violence and threats in the workplace. In his affidavit Reed denies threatening St. Clair, but when Ewald investigated the incident Reed did not deny making a threat and instead asserted that his actions had been justified by St. Clair's behavior. Ewald issued Reed and St. Clair identically worded "final" warnings.

In the months that followed, Reed's interactions with managers sometimes were contentious. He avers, for example, that a sales manager scolded and berated him on several occasions. And after he filed his first administrative charge in early February, says Reed, Halama disparaged and cursed him, and refused to discuss work matters without a witness present. Reed adds that another manager, Cary Kerns, also cursed him and dared him to sue when Reed asked that the swearing stop.

Reed also recounts two racially charged comments from coworkers. He once asked a white salesman for a personal loan, and his coworker expressed reluctance to risk giving Reed money because "Blacks don't last too long around here." Another time Reed overheard a sales manager comment that young black men moving to the suburbs had caused an increase in crime.

Reed's allegation that Ewald purposely diverted sales away from black employees is not supported by the record. In his affidavit Reed avers that he and two other black salesman conferred and decided that one of them should confront managers about their perception that sales calls were being unfairly distributed to three favored coworkers, all of them white. But Reed himself did not meet with Ewald managers, and neither is there admissible evidence that the group's designated spokesman did so. Also missing is evidence supporting the group's perception of favoritism. Reed says that twice he was the initial sales contact for a prospective customer whose name he entered into Ewald's database, but both customers were assisted by a white staff member upon returning to the dealership. Reed speculated that managers stole these customers from him because of his race, thus denying him sales commissions. But Ewald does not have a record of a sale to either customer, and neither did Reed present evidence that his prior contact was known to the sales manager when they returned to the dealership. In fact, Reed was not even working when one of the customers returned.

Reed's termination followed an argument spurred by a company policy requiring sales staff to arrive early and clear snow away from cars on mornings after significant overnight snowfall. Reed did not arrive early on March 6, 2006, and when Halama accused him of giving a "bullshit excuse," Reed put down his hat and briefcase and approached Halama. One witness described Reed's approach as "very physical and aggressive." An explosive chest-to-chest shouting match followed. Reed reportedly yelled, "I'll deck you," and had to be pulled away from Halama. Immediately afterward, Reed told general manager Roger Duame that he would use Duame's coffee cup to hit Halama if he was disrespected again, a threat Reed says he made in jest. Following an investigation Ewald fired Reed based on a finding that he threatened Halama despite the earlier warning.

The magistrate judge concluded that Reed had not established a prima facie case of discrimination. The court reasoned that the verbal abuse and reprimands he experienced were not sufficiently severe or pervasive to significantly alter the conditions of his employment, and thus did not qualify as materially adverse employment actions or create a hostile work environment. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840-41 (7th Cir. 2009); *Hancock v. Potter*, 531 F.3d 474, 478-79 (7th Cir. 2008); *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). Indeed, the court explained, many of the incidents Reed cited as evidence of discrimination, when viewed in context, point more to his own insubordination. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 713-14 (7th Cir. 2004).

The magistrate judge assumed that lost sales commissions would have been a tangible injury, *see Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996), but Reed lacked evidence that his two customers allegedly steered to white salesmen ever

finalized purchases from the dealership. He also lacked evidence that Ewald knew about his prior contact with these prospects. And while Reed did suffer an adverse action when he was fired, the magistrate judge concluded that he could not prove that any white employee had been retained after twice violating Ewald's anti-violence policy. S*ee Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 675-77 (7th Cir. 2006).

As for Reed's claim that Ewald fired him to retaliate for filing a charge of discrimination, the magistrate judge again concluded that Reed had not established a prima facie case. *See Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 677 (7th Cir. 2010). The court reasoned that, although Reed was fired only a month after submitting his administrative complaint, *see Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 616 (7th Cir. 2001), the undisputed reason for his termination was his altercation with Halama after the earlier warning.

On appeal Reed contends that the magistrate judge erroneously ignored much of the evidence he submitted at summary judgment; that evidence, Reed apparently believes, establishes disputed issues of material fact warranting a trial. Reed also argues that the court abused its discretion by refusing to compel Ewald to produce all of the discovery he demanded.

We reject Reed's assertion that the court simply accepted as true Ewald's version of events while ignoring his side of the story. As the court reminded Reed in its order granting summary judgment, the local rules of the Eastern District of Wisconsin provide that each specific paragraph in a litigant's proposed findings of fact will be deemed admitted unless the opponent contradicts that paragraph with citations to admissible evidence. *See* E.D. Wis. Civil L.R. 56(b)(2), (4) (2010) (formerly designated as Local Rule 56.2(b)(2), (d),(e) (2009)). Ewald included in its motion for summary judgment a copy of this rule and warned Reed about the consequence of noncompliance, *see Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992), and yet Reed made no effort to follow the rule. Instead he tendered a short affidavit, which the magistrate judge characterized as noncompliant but nevertheless considered to the extent it rests on personal knowledge. But otherwise the court relied on Ewald's uncontested statements of fact, as was appropriate even though Reed is pro se. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Schrott v. Bristol-Meyers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). We likewise have evaluated only the evidence that was properly before the magistrate judge and discount any statements in Reed's appellate brief that are not supported by the record.

As we understand his brief, Reed principally contends that the magistrate judge hampered his development of admissible evidence by not forcing Ewald to give him all the discovery he requested. On two occasions the court had denied a motion to compel because

Reed omitted copies of the disputed discovery requests. He then tried again, this time challenging as incomplete Ewald's responses to 10 of 19 interrogatories and 13 of 18 requests for production. Reed was satisfied, though, with the dealership's other responses, including its compliance with his most-probative request for the disciplinary records of specific Ewald employees.

Among the 10 interrogatories that Reed said had not been answered fully, only a few—those demanding information about the sales staff employed at the dealership between June 2005 and December 2006, about other employees who were fired because of workplace violence, and about the handling of his personnel file—appear to be relevant to his claims. But Ewald responded to each of these requests, and in this court Reed does not contend that the magistrate judge abused his broad discretion, *see Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 813 (7th Cir. 2006), by not forcing Ewald to make further disclosures.

Reed instead focuses on several requests for production that the magistrate judge did not compel Ewald to satisfy. These seek work schedules, electronic time cards, and payroll records for Ewald employees. Reed suggests that these records would have allowed him to compare his performance with other coworkers. But Reed was fired because of misconduct, not because of absences or tardiness or because he did not help shovel snow. His preoccupation with proving that his attendance record was better than many of his coworkers is not relevant to the reason given for his termination, so we cannot conclude that the court abused its discretion by limiting this inquiry.

On the evidence presented, the grant of summary judgment for Ewald was correct. It is undisputed that Reed was fired because he threatened his coworkers. A handful of episodes of yelling and stray racist remarks cannot sustain a claim of racial harassment or create an inference that race was the reason for Reed's termination. *See Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002). And on this record a jury could not reasonably conclude that Reed was fired because of his administrative complaint. Before that charge of discrimination was filed, Reed already had been warned that his next threat against a coworker would be cost him his job. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850-51 (7th Cir. 2008); *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 667 (7th Cir. 2008). Accordingly, the judgment is AFFIRMED.