NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued December 15, 2009
Decided January 19, 2010

*Before*

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 08-3952

| | |
|---|---|
| BARBARA THOMAS-BAGROWSKI, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 04 C 3544 |
| RAY LaHOOD, Secretary of | |
| Transportation, | Wayne R. Andersen, |
| *Defendant-Appellee*. | *Judge.* |

**ORDER**

In this lawsuit under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000 *et seq.*, Barbara Thomas-Bagrowski claims that she was the victim of racial discrimination, retaliation, and a hostile work environment while employed by the Federal Aviation Admin-istration (FAA). The district court granted summary judgment for the FAA, and Thomas-Bagrowski appeals.

Thomas-Bagrowski was already a management employee in November 1997 when she and three other employees applied for a permanent position as a team leader in the

FAA's human resources division. A panel interviewed the four candidates and gave a white applicant, Valerie Granahan, the highest score. Thomas-Bagrowski, who is African-American, finished third. Thomas-Bagrowski did not contest the scoring. Eventually, the position was not filled due to a hiring freeze and internal job restructuring.

In June 1998, the FAA wanted to fill a temporary (one-year) opening for a team leader. Joseph Yokley, the regional manager for human resources, decided to appoint Granahan and Thomas-Bagrowski to split the position for six months each based on their 1997 interview scores. Yokley, who is African-American and was not a member of the interview panel, later admitted that he selected Thomas-Bagrowski, instead of the runner-up in the 1997 "team leader" competition, in a misconceived attempt at "affirmative action." But then, before Granahan completed the first six-month rotation, Yokley was approached by employees who had not applied for the permanent position but were interested in serving in the temporary team leader spot. Yokley then opened up the second rotation to other applicants and, instead of allowing Thomas-Bagrowski to serve the entire six months, divided the remaining time equally between her and five other employees (whose races are not specified). In response, Thomas-Bagrowski filed an internal complaint with the FAA in October 1998 claiming that Yokley engaged in racial discrimination.

Around the same time that Thomas-Bagrowski filed her internal complaint, the FAA's Great Lakes Region was undergoing reorganization. The FAA dissolved Thomas-Bagrowski's working group, and in November 1998 she was assigned to the Airways Facilities team, led by David Pinner. The FAA also revised its operating policy for human resources, in part to place greater emphasis on working together in teams and holding the entire team accountable for ensuring that leave and telecommuting requests from individual members do not impede customer service.

Thomas-Bagrowski first encountered problems with her new team over a demand to telecommute. In her previous position she worked from her home in Milwaukee, Wisconsin, instead of going to the office in Des Plaines, Illinois, and so she submitted a telecommuting proposal in November 1998 for her new team to approve. The team did not deny her request but asked her for more information. Instead of responding, Thomas-Bagrowski asked Pinner to approve the request himself and asserted that she qualified for accommodation under the Americans with Disabilities Act because of lower-back pain. Thomas-Bagrowski had previously cited back pain in a claim for worker's compensation, which the Department of Labor denied after she failed to provide sufficient documentation of her impairment and its cause. When Pinner asked for more information, Thomas-

Bagrowski told him that her medical clinic had faxed him information about her condition and that she did not feel the need to submit anything further.

In December 1998, Thomas-Bagrowski and Pinner clashed over her requests for annual leave. Before her reassignment to Pinner's team, Thomas-Bagrowski received approval to schedule annual leave. After joining the Airways Facilities team, she balked at having to resubmit the same leave requests to her new team for approval. Thomas-Bagrowski refused to coordinate the leave requests with her new team members, but Pinner approved the requests anyway.

But Pinner did not approve Thomas-Bagrowski's requests for sick leave. In February 1999 she asserted to Pinner that she was entitled to paid sick leave whenever she needed it, whether accrued or not. In the past Thomas-Bagrowski had received approval to take an advance of up to 240 hours against future sick leave, but that was to cover expected absences while she was receiving cancer treatments. Her requests to Pinner were for routine sick days and medical matters, which under FAA policy do not qualify for an advance against future sick leave. Pinner requested additional medical information, but Thomas-Bagrowski refused to submit anything. She told Pinner his requests violated the Privacy Act. The record establishes that Pinner required similar documentation from white employees who requested advances against their sick leave.

In March 1999, Thomas-Bagrowski filed another claim with the Department of Labor for worker's compensation. This time she alleged that her work environment was hostile and that it caused her to develop shingles. Her claim was denied for insufficient medical documentation.

Meanwhile, Thomas-Bagrowski simply stopped going to work. She was fired in September 1999 after unauthorized absences totaling nearly 500 hours over three months. She had submitted some documentation to justify her absences, but Pinner consulted with a physician in the medical division and concluded that the documentation was inadequate. Thomas-Bagrowski had not supplied an expected date of recovery, or a medical explanation for her incapacity, or a list of suggested duty restrictions. She challenged her discharge before the Merit Systems Protection Board, but her claim was dismissed. She did not appeal the Board's decision.

In 2004, Thomas-Bagrowski filed this lawsuit claiming racial discrimination (for denying her a six-month detail as team leader), retaliation (for denying her sick leave and telecommuting requests after she filed her internal complaint), and a hostile work

environment (for requiring approval from her team and additional medical documentation for her leave requests). The litigation, however, does not concern Thomas-Bagrowski's termination from the FAA. In granting summary judgment for the FAA, the district court concluded that Thomas-Bagrowski, who rested her discrimination claim on the indirect, burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), had produced no evidence suggesting that Yokley's reason for denying her the six-month detail--that he wanted to consider employees who had not applied for the permanent position--was pretextual. The court concluded that Pinner's refusal to permit Thomas-Bagrowski to telecommute was not a materially adverse action, because she had not shown that she was entitled to any accommodation for a disability under the ADA and, in any event, could not insist on being granted a telecommuting option as an accommodation. The court also reasoned that the refusal of sick leave was not materially adverse, as her requests did not comport with FAA policy. In addition, she showed no causal connection to her internal complaint. Finally, the court found no evidence of a hostile work environment and did not credit Thomas-Bagrowski's assertions that FAA personnel policies were "overwhelmingly excessive and unnecessary."

On appeal, Thomas-Bagrowski first argues that her discrimination claim should have survived summary judgment. She asserts that under the direct method the claim should have gone forward, but that theory was waived by the failure to present it to the district court, *see Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006), and is frivolous in any event because she has not identified any direct evidence of discrimination. Thomas-Bagrowski also contends that she established a prima facie case, and that the FAA failed to provide a legitimate explanation for denying her a six-month term as team leader. Thus, she concludes, a material dispute exists about whether the agency acted out of a preference for white employees.

The FAA's motion for summary judgment discussed Thomas-Bagrowski's case under the indirect method of racial discrimination. In her response, Thomas-Bagrowski presented no legal argument, only an extended list of facts and exhibits. The district court followed the FAA's lead and simply assumed that Thomas-Bagrowski had established a prima-facie case and skipped directly to the question of pretext. The agency offered undisputed evidence that Yokley divided up the last six months of the temporary position of team leader because he wanted to consider employees who were interested in that brief assignment but had not applied for the permanent position. *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007) (explaining that employer may prevail on summary judgment if it offers genuine, nondiscriminatory reason for employment action); *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007) (explaining that employer's reasons need

only have been honest, regardless if they were accurate or wise, to prevail on summary judgment).  There is no evidence that Yokley lied about his desire to consider more applicants (or even any evidence that the employees who shared the final six months with Thomas-Bagrowski were not African-American), and he stated that he always planned to reevaluate the division's needs before Thomas-Bagrowski began her term.  In fact, as Thomas-Bagrowski acknowledges, Yokley originally selected her in part out of a racial preference, in an attempt at affirmative action.

The lack of evidence of pretext is reason enough to sustain the grant of summary judgment on the discrimination claim, but we add the observation that Thomas-Bagrowski did not establish a prima facie case.  What was missing is evidence that she was best qualified for the six-month position in the first place.  *See Jackson v. City of Chi.*, 552 F.3d 619, 622 (7th Cir. 2009).  As the FAA acknowledges, Yokley's initial decision to award her the detail because of her race, despite the fact that the interview panel favored another white candidate, could have led to a legitimate reverse-discrimination claim from the second-place candidate.  *See Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).  In that sense, then, Thomas-Bagrowski lost nothing when Yokley rescinded the decision to let her fill the temporary position for the entire six months.

Thomas-Bagrowski also challenges the district court's conclusion that the FAA's refusals to approve her sick leave and telecommuting requests were insufficient to show a genuine issue of retaliation.  Her brief is difficult to follow, but apparently she argues that the timing of the changes in FAA policies after she had filed an internal complaint alleging discrimination was enough to show a causal connection to a materially adverse action.

The district court correctly recognized, however, that the FAA did not take a materially adverse action by declining to approve Thomas-Bagrowski's requests for sick leave or to telecommute.  By refusing to provide required documentation, Thomas-Bagrowski never completed the requests in the first place.  *See, e.g., Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004).  The FAA did not alter the conditions of her employment, *see Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004), but simply required that she follow agency-wide procedures in asking for those benefits.

**AFFIRMED**.