NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2010
Decided April 5, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 09-1234

| | |
|---|---|
| LINDA WILLIAMS,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 07 CV 2089 |
| ERIC K. SHINSEKI,<br>Secretary of Veterans Affairs,<br>U.S. Department of Veterans Affairs,<br>    *Defendant-Appellee*. | Harold A. Baker,<br>*Judge.* |

**O R D E R**

Linda Williams claims in this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, that the Department of Veterans Affairs ("VA") fired her because of her race and because she filed a charge of discrimination four years earlier. The district court granted the VA's motion for summary judgment and denied Williams's motion to vacate that decision. We affirm both decisions.

Ordinarily we would recount the facts in the light most favorable to the nonmoving party. *See Winsley v. Cook County*, 563 F.3d 598, 602 (7th Cir. 2009). Here, however, Williams failed to respond to the VA's motion for summary judgment, so the district court granted

the motion based on the VA's version of the facts. *See* FED. R. CIV. P. 56(e)(2); C.D. ILL. L.R. 7.1(D)(2); *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). We therefore base our decision on the VA's version of events.

Before she was fired in November 2006, Williams, who is black, had worked for more than 20 years as a licensed practical nurse at the VA hospital in Danville, Illinois. During her employment, she filed several charges of discrimination, one of which was settled in 2002. In April 2006 a dispute arose between Williams and a lower-ranking nursing assistant ("NA"), and as a result of that incident, the VA suspended Williams for 14 days. A few months later two other employees reported that Williams had been abusive during separate phone conversations, and this time the VA fired her. Williams then sued. In her complaint she claims that her suspension and termination were discriminatory and also in retaliation for the 2002 settlement.

The VA's motion for summary judgment tells a different story. Although acknowledging that it settled the earlier charge of discrimination, the VA asserts that Williams lost her job because of the verbal altercations with coworkers. The first of these incidents, the argument with the NA, occurred on a morning when the VA was understaffed. Williams had informed the NA that, according to the roster for mandatory stand-in nurses, it was her turn to work an extra shift. The NA disagreed and refused the additional hours, which angered Williams. When the NA then enlisted another nurse to intervene, Williams reported to a superior that the NA appeared to be under the influence of drugs or alcohol. Williams made this accusation in front of other employees and patients without any tangible information to support her belief.

A formal investigation followed. Ermelinda Martin, supervisor to both Williams and the NA, collected written statements from several witnesses and held a face-to-face meeting with the two. At that meeting Martin noted that none of the other witnesses had expressed a concern that the NA had been using drugs or alcohol on the morning in question, but Williams maintained her position and claimed that, by relaying this information, she had complied with her duty to report employees she believed to be impaired. Williams refused to apologize and instead suggested that the NA should be tested for drug use. Martin concluded that Williams's accusation was baseless and defamatory but that the NA had been insubordinate in refusing to work the extra shift, so she recommended that both women be disciplined.

The chief of nursing, Ann Wagle, accepted Martin's conclusions and determined the penalties Williams and the NA ultimately received. Because the NA's only previous disciplinary infraction had been for slamming a door, she received a written reprimand. Williams, however, was suspended for 14 days. In reaching this decision, Wagle considered

a variety of factors, including Williams's behavior on the day in question, her position as a superior to the NA, the nature of the comments Williams had made, and the fact that Williams had a more substantial disciplinary record, which included a previous five-day suspension. According to VA policy, Williams was given an opportunity to object to the proposed disciplinary action, but she never responded.

A few months after her suspension, Williams went on medical leave. There was a problem with the paperwork, and Williams received a letter from Martin while she was away informing her that she would be fired if she failed to report back to work. Williams called Martin to respond. As soon as Martin answered the phone, Williams began screaming, saying that Martin had no right to send such a letter. After trying unsuccessfully to get Williams to stop yelling, Martin ended the call and reported the incident to Wagle. A few days later, Williams called a budget technician to inquire about her paid leave. When the technician informed Williams that there was a hold on her account, Williams responded by calling her "stupid" and "a liar." The budget technician reported the call to her supervisor, saying she was insulted and appalled by Williams's behavior. Once Wagle learned of the second call, she recommended that Williams be fired because, in her view, these calls constituted the same type of disrespectful behavior for which Williams had been suspended and, under the VA's progressive disciplinary program, termination was appropriate. Once again, Williams failed to exercise her opportunity to respond, and she was fired in November 2006.

After exhausting her administrative remedies, Williams filed her complaint in federal court in April 2007. In the process of preparing the case for trial, the district court granted Williams various extensions, including an additional 90 days for discovery and an additional two weeks to respond to the VA's motion for summary judgment. In his request to extend the time to oppose summary judgment, Armand Andry, Williams's attorney both in the district court and in this appeal, cited family health concerns and his busy case schedule to explain why he could not comply with the deadline. The two additional weeks that the court provided proved insufficient, however, and Andry failed to respond to the VA's motion. Four days after the deadline had passed, the district court entered a final judgment granting the VA summary judgment.

Ten days later, Andry filed a motion to vacate the judgment, *see* Fed. R. Civ. P. 60(b), and asked the district court to file instanter Williams's opposition to summary judgment. In the proposed opposition that Williams tendered with her motion to vacate, she denied much of the VA's version of facts. In particular, she objected to the characterization of the incident with the NA and denied having behaved inappropriately in either of the telephone calls she made before she was fired. Williams also included information about five other employees who, she said, were similarly situated but treated more favorably. As for the

expired deadline, Andry gave personal illness, inclement weather, and his case load as his reasons.  The district court, having lost its patience with Andry's inability to meet deadlines, decided that "enough is enough" and denied the motion to vacate.

Williams's first argument on appeal is that the district court erred in refusing to vacate the decision granting the VA's motion for summary judgment. We review the court's ruling for abuse of discretion.  *See Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008). Andry acknowledges that he failed to respond to the motion, but contends that his nonfeasance was "excusable neglect" based on circumstances beyond his control.  *See* Fed. R. Civ. P. 60(b); *Eskridge v. Cook County*, 577 F.3d 806, 808 (7th Cir. 2009).  District courts are allowed to strictly enforce summary judgment deadlines, *Raymond v. Ameritech Corp.*, 442 F.3d 600, 607-08 (7th Cir. 2006), and having already given Williams additional time to respond, the district court was not required to forgive her failure to timely oppose summary judgment.  "[I]t is widely accepted that neglect due to a busy schedule is not excusable." *Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006); *see Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1048 (8th Cir. 2010); *Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 101 (1st Cir. 2003); *United States v. Dumas*, 94 F.3d 286, 289 (7th Cir. 1996). Although severe illness could cause excusable neglect, *see Dickerson v. Board of Educ.*, 32 F.3d 1114, 1118 (7th Cir. 1994), Andry failed to show that his illness was of such a magnitude that he could not, at a minimum, request another extension of time to file his response.  Rule 60(b) decisions "will stand 'unless no reasonable person could have acted as the judge did,'" *Castro v. Bd. of Educ.*, 214 F.3d 932, 935 (7th Cir. 2000) (internal citations omitted), and the district court reasonably insisted on compliance with the filing deadline.

Although failure to respond to a motion for summary judgment does not necessarily result in judgment for the movant, *Raymond*, 442 F.3d at 608, the omission effectively was the end of the road for Williams.  In this court Williams asserts that, even accepting the VA's statement of material facts as undisputed, there is enough evidence of discrimination and retaliation to survive summary judgment.  But despite this assertion, Williams proceeds to argue the version of the facts included in her untimely response even though the district court refused to accept it, and *those* facts, says Williams, establish that she was discriminated and retaliated against under either the direct or indirect methods of proving a Title VII violation.  This position is untenable, and when the evidence at summary judgment is viewed in the proper light, it is clear that the VA had a valid and undisputed justification for its actions: the VA suspended and later fired Williams because of her poor attitude and belligerent behavior toward her colleagues.

To prevail on a discrimination or retaliation claim under the direct method, Williams needed to establish that she was suspended and fired as a result of her race or protected conduct.  *See Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006).  She

could have done this by providing either direct or circumstantial evidence that pointed directly to an improper reason for the VA's actions. *See Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). But the VA's version of facts provides no evidence to suggest that Williams was suspended or fired because of her race or because of the settlement she reached in 2002. Thus, her only option was to proceed under the indirect method.

Williams failed, however, to establish a prima facie case for either discrimination or retaliation under the indirect method. To prove discrimination she needed to show that she belongs to a protected class, met the VA's legitimate performance expectations, suffered an adverse employment action, and was treated worse than similarly situated employees outside the protected class. *Tyson v. Gannett Co., Inc.*, 538 F.3d 781, 783 (7th Cir. 2008). Her retaliation claim required the same evidence except that, instead of proving membership in a protected class, she needed evidence that she engaged in statutorily protected activity. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005). But because she did not oppose the VA's motion for summary judgment, Williams failed to identify similarly situated employees who received better treatment, and she did not establish that she met the VA's legitimate employment expectations. These shortcomings were fatal to both claims.

Even if we considered the five comparators Williams identified in her past-due opposition to summary judgment, none of them would pass muster. A similarly situated employee is one who is "directly comparable" to the plaintiff "in all material respects." *Raymond*, 442 F.3d at 610. To prove this element, Williams needed to demonstrate that the comparators "occupied the same job level and engaged in similar past misconduct" but were nonetheless subject to more favorable disciplinary action. *Jordan v. City of Gary*, 396 F.3d 825, 834 (7th Cir. 2005). Williams compared herself to two NAs, but this comparison could not be accepted because Williams's position of authority was relevant to the discipline she received. *See Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009). The remaining comparisons that Williams attempted to make were also invalid because they involved individuals with dissimilar disciplinary records. *See Jordan*, 396 F.3d at 834. Thus, even under the version of events Williams espoused, she did not establish a prima facie case for discrimination or retaliation.

One final aspect of this case merits mention. The dilatory conduct displayed by Andry's inability to meet filing deadlines in this case and others is a disservice to his clients and to the courts where he practices. In addition to the extensions he received in the district court, Andry asked us four times to extend the due date for his opening brief, and three of those times he did so with less than five days to spare. Two weeks after the final deadline had expired, he finally submitted his brief with a request that we file it instanter. Although three of his extension requests mention his health, Andry's request that we accept his overdue brief cited only other appeals as the cause for his delay. In the appeals he cited, we

extended the deadline for Andry to file the respective briefs 11 times, and in each case he still missed the final deadline and asked us to accept the briefs instanter. *Berry v. Chi. Transit Auth.*, No. 07-2288 (7th Cir. appeal docketed June 5, 2007); *Perry v. Local 701 Int'l Bhd. of Elec. Workers*, No. 08-3662 (7th Cir. appeal docketed Oct. 21, 2008); *Nuzzi v. Bourbonnais Elementary Sch. Dist.*, No. 09-1066, 2010 WL 114195 (7th Cir. 2010) (unpublished). And these are just the cases that Andry mentioned in his motion to file Williams's brief instanter. In at least three other recent appeals, Andry has filed multiple motions to extend the briefing schedule, and in two of those cases Andry filed his brief either with a motion to accept it instanter or in response to an order to show cause. *See Thomas-Bagrowski v. LaHood*, No. 08-3952, 2010 WL 185112 (7th Cir. 2010) (unpublished); *Tai v. Shinseki*, 325 Fed. App'x 444 (7th Cir. 2009) (unpublished). This February we denied Andry's most recent extension request in a third case, and he cited health issues that have existed since May 2009 to explain why he could not comply with the filing deadline. Nearly a month after receiving no response to this court's ordering a rule to show cause, the appeal was dismissed. *Rizvi v. J.P. Morgan Chase Bank,* No. 09-2568 (7th Cir. appeal docketed June 22, 2009). We are not insensitive to attorneys' health issues, but Andry's habitual failures have eliminated any credibility for his chronic requests. Like the trial court, we have the reached point of saying that enough is enough. "Courts cannot operate without setting and enforcing deadlines," *Gross v. Town of Cicero*, 528 F.3d 498, 499-500 (7th Cir. 2008), and this order should put both Andry and his clients on notice that we intend to fully enforce those deadlines in the future.

The judgment of the district court is AFFIRMED.